# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY BLEVINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br><br>PREMIUM MERCHANT FUNDING ONE, LLC,<br><br>Defendant, | Case No.: 2:18-cv-00377<br><br>**JUDGE GEORGE SMITH**<br><br>**MAGISTRATE JUDGE ELIZABETH DEAVERS**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Jeffrey Blevins ("Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## NATURE OF THE ACTION

1. Premium Merchant Funding One, LLC (hereafter, "PMF" or "Defendant") either sent, or caused to be sent, automated "text blasts" to hundreds or thousands of people in the hopes of generating business leads. In doing so, it violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by making more than one call within a 12-month period to Plaintiff and Class Members who placed their telephone numbers on the National Do Not Call Registry ("NDNC").

2. On behalf of the classes, Plaintiff seeks an injunction requiring PMF to cease all unauthorized automated telephone calls, and an award of statutory damages to the members of the classes, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

3. This matter in controversy exceeds $5,000,000, as each member of the proposed Class is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges national classes, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

4. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendant because a substantial part of the events concerning the unauthorized texts at issue occurred in this District, establishing minimum contacts showing Defendant has purposefully availed itself of the resources and protection of the State of Ohio.

6. Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because the majority of activities giving rise to the claims took place in the District, since Plaintiff received the offending texts in this District, and Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

## PARTIES

7. Plaintiff Jeffrey Blevins is, and at all times relevant has been, a resident of the State of Ohio.

8. Defendant Premium Merchant Funding One, LLC is a nationwide provider of business financing services, primarily in the form of short-term loans. Premium Merchant is a limited liability company organized under the laws of the State of New York, with a principal place of business in New York, NY. On information and belief, Premium Merchant is licensed to conduct business in the State of Ohio.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA and its regulations make it unlawful to:

> initiate any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. §§ 64.1200(d).

11. The TCPA and the Regulations mandate that all telemarketers institute certain minimum procedures and standards prior to placing any telemarketing call. If such mandatory minimum procedures are not instituted, then each telemarketing call constitutes a violation of the

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

TCPA, 47 U.S.C. § 227(c)(5), and the Regulations, 47 C.F.R. § 64.1200(d).  Where a violation has occurred, any person receiving two or more calls has a private right of action.

12. With regard to calls or texts made for telemarketing purposes, the Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

13. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made or a text is sent bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

14. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

15. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[2]

16. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

17. The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

18. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

---

[2] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

28 FCC Rcd at 6592 (¶ 46).

19. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS

### Plaintiff Blevins

20. Plaintiff Blevins is the owner and sole proprietor of Interior Creations, a small business that performs home remodeling and improvement projects.

21. Plaintiff Blevins is the exclusive user of the telephone assigned the number ending in 3503 and the account holder of record for that account. For several years, the number has been registered with the NDNC.

22. On April 3, 2018, at 12:14 p.m. EDT, Plaintiff Blevins received two unsolicited text messages on his cellular telephone:



23. Plaintiff Blevins responded to the text message, asking "Who is this and what's your company name?" Blevins received a response saying "My name is Bryce and I work with Premium!"

24. In order to gain more information regarding the source of the text message, Plaintiff Blevins asked, "Got a website? I'll check it out." Blevins then received a response from "Bryce" directing him to "www.pmfus.com."

25. On information and belief, www.pmfus.com is the website owned and operated by PMF. On this website, PMF states:

> Premium Merchant Funding's mission is to provide a broad array of services and solutions for small businesses. PMF offers merchant cash advances, small

business loans, SBA loans, equipment financing, factoring, purchase order financing and commercial mortgages nationwide. We will find you the best option for your business regardless of bad credit, high risk business types or financial issues. PMF also offers credit card processing, personal and business credit repair, payroll services and SEO & Web development.

26. Plaintiff Blevins has never contacted PMF for any purpose, and has no business relationship with it.

27. Plaintiff Blevins received all calls as described above on his cellular telephone assigned a number ending in 3503.

28. Plaintiff Blevins understood the purpose of PMF's text message was to market Defendant's services and solicit business from him.

29. Plaintiff Blevins did not consent to being texted by PMF for telemarketing purposes and the text received from Defendant was an intrusion into Plaintiff's privacy and caused Plaintiff Blevins annoyance and an unnecessary expenditure of his time and efforts.

30. PMF is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

31. PMF is, or should have been, aware that it or the automated calling/texting operation marketing PMF's services was sending telemarketing text messages in violation of the TCPA.

32. PMF had the ability to prevent unauthorized texts in violation of the TCPA from being placed by automated calling/texting operations conducted by themselves or by their vendors or marketing partners.

33. If PMF did not send the texts itself, PMF is directly liable for the telemarketing texts made on its behalf because it actively participated in those texts and was positioned to sign-up new business wholly derived from those texts.

34. PMF was legally responsible for ensuring that its vendors and marketing partners complied with the TCPA, even if PMF did not itself initiate the sending of the texts.

35. If PMF did not send the texts itself, PMF knew (or reasonably should have known) that its vendors or marketing partners were violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct.

## CLASS ACTION ALLEGATIONS

36. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

37. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

38. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons in the United States and its Territories whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone solicitation telemarketing call or text message from or on behalf of Premium Merchant Financing with a 12-month period, since April 23, 2014.

39. Plaintiff Blevins is a member of, and will fairly and adequately represent and protect the interests of, the Class.

40. Excluded from the Class are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is

assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

41. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

42. Plaintiff and all members of the Class have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

43. This Class Action Complaint seeks injunctive relief and money damages.

44. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

45. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

46. Further, all members of the Class can be identified through records maintained by Defendant and/or its telemarketing agents and/or telephone carriers.

47. There are well defined, nearly identical, questions of law and fact affecting all parties.

48 The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

49. Such common questions of law and fact include, but are not limited to, the following:

      a.      Whether Defendant or its agent sent more than one text to any customer in a twelve month period;

      b.      Whether Defendant or its agent maintained necessary procedures for compliance with the National Do Not Call Registry;

      c.      Whether the Defendant's conduct was knowing and/or willful;

      d.      Whether the Defendant is liable for statutory damages; and

      e.      Whether the Defendant should be enjoined from engaging in such conduct in the future.

50. As a person whose telephone number was placed on the National Do Not Call List and who received more than one text message in a twelve month period, Plaintiff asserts claims that are typical of the Class.

51. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests which are antagonistic to any member of the Class.

52. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

53. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## COUNT I

**Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**

54. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55. PMF violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing text messages within a 12-month period on PMF's behalf to Plaintiff and the members of the NDNC Class while those persons' phone numbers were registered on the National Do Not Call Registry.

56. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## COUNT II
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**

58. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59. PMF knowingly and/or willingly violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing text messages within a 12-month period on PMF's behalf to Plaintiff and the members of the NDNC Class while those persons' phone numbers were registered on the National Do Not Call Registry.

60. As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

61. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. As a result of Defendant's statutory violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the NDNC Class $500 in statutory damages for each and every violation of the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

  F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated:  June 14, 2018    By:  /s/  Matthew R. Wilson
               Matthew R. Wilson

            MEYER WILSON CO., LPA
            Matthew R. Wilson (Ohio Bar Number 0072925)
            Email:  mwilson@meyerwilson.com
            Michael J. Boyle, Jr. (Ohio Bar Number 0091162 )
            Email:  mboyle@meyerwilson.com
            1320 Dublin Road, Ste. 100
            Columbus, Ohio 43215
            Telephone:  (614) 224-6000
            Facsimile:  (614) 224-6066

            *Attorneys for Plaintiff and the Proposed Classes*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts so triable.

Dated: June 14, 2018

By: s/ *Matthew R. Wilson*

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio Bar No. 0072925)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio Bar No. 0091162)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiff and the Proposed Classes*